IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BALISLE & ROBERSON, S.C.,

                              Appellant,                           OPINION AND ORDER

        v.
                                                                   14-cv-832-wmc
RONALD A. SYMDON,

                              Appellee.

Appellant Balisle & Roberson, S.C. ("Balisle") appeals from an order of the Bankruptcy Court for the Western District of Wisconsin, which sustained appellee Ronald A. Symdon's objection to a request that Balisle's claim be given priority status under 11 U.S.C. § 507(a)(1)(A). *In re Ronald Symdon*, No. 13-14692 (W.D. Wis. Oct. 3, 2014) (bankr. dkt. #39). For the reasons that follow, the court will vacate the order and remand for further proceedings consistent with this opinion.

## BACKGROUND

Ron Symdon and his wife Peggy Symdon divorced in 2010. As part of the divorce decree, Ron was required to pay $70,000 in attorneys' fees that Peggy incurred during the divorce proceedings. (Bankr. dkt. #37 at 16 (listing Ron as the "responsible party" for "cash contribution to Peggy's attorneys' fees" in the amount of $70,000); *see also id.* at 15 (listing one of Peggy's assets as "Contribution to attorney's fees in the amount of $70,000").) As Peggy's divorce counsel, the Balisle law firm ultimately was to be the recipient of the payment owed by Ron.

In an order, the family court arbitrator explained that the fees were awarded, in part, in consideration of the "overall equities in the case" and Symdon's "greater ability to pay." (Bankr. dkt. #38 at 3-4.)  To date, however, Symdon has failed to pay Balisle any of the $70,000.  As a result, Balisle represents that Peggy remains liable for those attorneys' fees.

On January 7, 2012, Symdon filed for bankruptcy under Chapter 7, listing his obligation to pay Balisle's fees as one of a number of debts subject to discharge.  In response, Balisle commenced an adversary proceeding, seeking a determination of the nondischargeability of its attorneys' fees award.  Without opposition from Ron Symdon, the bankruptcy court issued an order finding Balisle's debt was nondischargeable pursuant to both 11 U.S.C. § 523(a)(5) and (a)(15).  Symdon received a Chapter 7 discharge on April 24, 2013.

On September 24, 2013, however, Symdon again filed for bankruptcy, this time under Chapter 13, listing Balisle as an unsecured, non-priority creditor.[1]  Balisle then filed a claim seeking priority under § 507(a)(1)(A) on the basis that its claim represents a "domestic support obligation."  Unlike in the Chapter 7 proceeding, Symdon filed an objection to Balisle's claim, arguing that it was not entitled to priority status and should be treated as a general unsecured claim.  (Bankr. dkt. #30.)

---

[1] Because Symdon filed for Chapter 13 bankruptcy within four years (indeed, within five months), he is unable to discharge his debts after completing an agreed-upon payment plan, including that owed to Balisle, but can obtain a more reasonable payment plan and keep creditors from suing, garnishing wages or levying other assets.

The bankruptcy court held a hearing on Symdon's objection on June 23, 2014. After the submission of post-hearing briefs, the bankruptcy court issued an order sustaining the objection on October 3, 2014.  (Bankr. dkt. #40.)  This appeal followed.

APPLICABLE STATUTE

Relevant to the present case, 11 U.S.C. § 507(a)(1)(A), provides in pertinent part:

> (a) The following expenses and claims have priority in the following order:
>
> (1) First:
>
> (A) Allowed unsecured claims for *domestic support obligations* that, as of the date of the filing of the petition in a case under this title, are *owed to or recoverable by* a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, . . . .

11 U.S.C. § 507(a)(1)(A) (emphasis added).[2]

OPINION

## I.  Preliminary Issues

For good reason, Balisle does not renew its argument below that Symdon is precluded from objecting to the priority status of its claim based on the bankruptcy court's prior finding of nondischargeability in the Chapter 7 context.  The bankruptcy court goes to great lengths to explain why this is so (*see* 10/3/14 Memo. Decision (bankr. dkt. #39) 2-3), and Balisle offers no challenge to its reasoning.  Although there is

---

[2] First priority status under § 507 is material since those claims must receive the full face amount of the priority claim, albeit in deferred, installment payments over the life of the Plan.  11 U.S.C. § 1222(a)(2).

obviously no reason to repeat this explanation, a very brief summary may be helpful for context.

In essence, because Balisle's claim of nondischargeability under Chapter 7 was unopposed by Symdon (who was proceeding *pro se*), the bankruptcy court granted that request. In the Chapter 13 proceeding, after Symdon (now with counsel) objected to any special treatment of appellant's claim, the bankruptcy court had a fresh opportunity to consider the treatment of domestic support obligations generally, as well as to consider the claim in the Chapter 13 context for purposes of determining priority status more specifically. This court, too, finds no reason why the bankruptcy court would be somehow bound by its prior finding that the claim was nondischargeable under Chapter 7.

Appellant also appears to hint at a possible fairness issue in its description of the relevant facts, stating that "[t]he Bankruptcy Court emphasized at the hearing that it was not going to revisit the issue of dischargeability; rather the parties were to submit briefs only on the issue of whether Claim No. 3 should be entitled to priority under § 507(a)(1)(A)." (Appellant's Opening Br. (dkt. #2) 9.) This suggestion is also a non-starter, however, since Judge Martin's order *is* limited to the issue of whether the claim is entitled to priority status.

Moreover, appellant was apprised that this was the issue at the evidentiary hearing *before* supplemental briefs were filed. Indeed, counsel for appellant framed the dispute during the hearing, asking "[a]s far as the issues, is it that only debts owed to the spouse

are nondischargeable or entitled to priority status?"  To which Judge Martin responded, "Entitled to priority.  This is clearly a priority question."  (Bankr. dkt. #55 at 8.)

## II. Priority Analysis

Putting those initial issues aside, this appeal turns on a question of statutory interpretation, which is a question of law.  Therefore, the court reviews the bankruptcy court's denial of appellant's motion for priority status *de novo*.  *See In re Seibert*, 914 F.2d 102, 105 (7th Cir. 1990).

Section 507(a)(1) was amended by Congress in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act, which expressly limited the priority status of "domestic support obligations" to debt "owed to or recoverable by" a specific list of individuals, including the former spouse and children.  Symdon does not dispute that the attorney's fee award is a "domestic obligation," so this case turns solely on whether this obligation is "owed to or recoverable" by the Balisle law firm as appellant.

 Since the Balisle law firm is neither the former spouse nor a child of the debtor as expressly listed by statute, it certainly does not fit cleanly into one of these two categories.  Indeed, the bankruptcy court below expressly found Balisle was excluded from priority treatment under this plain reading.

As the bankruptcy court itself acknowledged in its order, however, its reading is contrary to the vast majority of courts that have considered this issue.  *See, e.g.*, *McNeil v. Drazen*, 499 B.R. 484, 491-92 (D. Md. 2013) ("Post-BAPCPA, the weight of authority of bankruptcy courts in this circuit and others is that attorney fee debts awarded in

domestic litigation may qualify as domestic support obligations, even if they are not payable directly to the debtor's spouse, former spouse, or child." (citing cases)).  Courts so holding have primarily relied on the fact that "an award of attorney fees is in the nature of alimony, maintenance or support under law in effect prior to the effective date of the [BAPCPA], and that the passage of BAPCPA did not alter the priority of such debts." *In re Tepera*, No. 11-80477-G3-13, 2012 WL 439257, at *2 (Bankr. S. D. Tex. Feb. 9, 2012).

As Balisle points out, there are more cases considering whether a fee award owed to an attorney or a law firm constitutes a domestic support obligation in the context of nondischargeability under 11 U.S.C. § 523(a)(5) in the Chapter 7 context.  The language of that statute similarly contains a list of specific individuals, "spouse, former spouse, or child" without a reference to attorneys, and, critically, that language pre-dates the referenced change to § 507(a)(1)(A) under the BAPCPA.  *See In re* Poole, 383 B.R. 308, 313 (Bankr. D.S.C. 2007) (observing that similarity of language in pre-BAPCPA § 523(a)(5) and post-BAPCPA § 507(a)(1)(A) make case law applicable to § 523(a)(5) helpful in interpreting § 507(a)(1)(A)).

Nevertheless, courts, including several courts of appeals, have interpreted § 523(a)(5) to cover "attorneys fees, even if payable to an attorney rather than to a former spouse, if such fees are in the nature of maintenance or support of the former spouse of the child of the debtor."  *In re Kline*, 65 F.3d 749, 751 (6th Cir. 1995); *see also In re Silansky*, 897 F.2d 743, 744 (4th Cir. 2990); *In re Williams*, 703 F.2d 1055, 1057 (8th Cir, 1983); *In re Spong*, 661 F.2d 6, 11 (2d Cir. 1981); *In re Rodriguez*, 22 B.R. 309,

311 (Bankr. W.D. Wis. 1982) (Martin, J.) ("[I]n a case where an award of attorney's fees has been made for the purpose of providing support, their being payable directly to the attorney does not make the debt dischargeable.").   In other words, that § 523(a)(5) describes debts "owed to a spouse, former spouse, or child" does not preclude an attorney who now owns a domestic support obligation debt from asserting nondischargeability. To hold otherwise would "exalt[] form over substance." *In re Sprong*, 661 F.2d at 11; *see also McNeil*, 499 B.R. at 493 ("The standard for whether a claim is in the nature of support is the same pre-BAPCAP as post-BAPCPA.").

Applying the same logic from the § 523(a)(5) context, and consistent with the majority of courts who have considered the same issue post-BAPCPA in the Chapter 13 context, the court holds that an attorney may pursue a claim of priority status a Chapter 13 bankruptcy proceeding under § 11 U.S.C. § 507(a)(1)(A), so long as the other requirements of that statute are met.   On this basis, the court will reverse and vacate the bankruptcy court's order.


## III. Remand

Still, the court will not direct the bankruptcy court to enter an order granting Balisle's claim priority status on remand.   While appellant's argument wins the day as a matter of law, Balisle has failed to demonstrate that it *is* the owner of the $70,000 debt. Instead, the appellant simply states, without citing support in the record, that:   (1) the *Balisle law firm* is owed the money; and (2) Peggy Symdon remains liable for attorneys' fees if Ron Symdon does not pay.   (Appellant's Opening Br. (dkt. #2) 4 ("To date, Ron

has failed to pay Balisle & Roberson any of the $70,000.00 award.  Peggy still remains liable to Balisle & Roberson for the Attorneys' fees.").)  Similarly, appellant asserts elsewhere in its brief without factual support that "the claim owed to Balisle & Roberson is the equivalent of a debt owed to Ron's former spouse, Peggy."  (*Id*. at 15.)

Not only does Balisle fail to cite *any* documentation in support of its claim that *Balisle* is owed the money, but the divorce decree that is part of this record states the $70,000 is owed to Peggy.  If it is owed to Peggy, then it is *her* claim to assert in the bankruptcy proceeding, at least without an assignment from Peggy to the Balisle law firm.  If Peggy is still on the hook for the attorney's fees, then Balisle's remedy is to either obtain her formal assignment *or* perhaps to pursue a claim against Peggy, and for Peggy, in turn, to pursue a claim against her ex-husband.  All of these observations are merely to suggest that the fact that the debt at issue is *for* attorney's fees incurred as part of a divorce is not the critical issue; rather, whether appellant's claim is deserving of priority status -- indeed, whether appellant has standing as a creditor in the first instance -- turns on the identity of the holder of that debt.[3]  *See In re Perlin*, 30 F.3d 39, 41-42 (6th Cir. 1994) (holding that attorneys lacked standing to contest dischargeability of fee award since the debt was owed to the former wife, not her attorneys).

Said another way, the problem for appellant is *not* whether the debt at issue constitutes a *domestic support obligation*, which appellee essentially concedes, but whether it

---

[3] The divorce papers which are a part of the record in this case suggests that Balisle may already have been paid by Peggy, with the benefit of a loan by her sister, but as reflected in the text above, the court will not speculate as to the reasons for appellant's failure to seek to supplement the record on this crucial question.

is still *owed to or recoverable by* Peggy Symdon as the spouse.  If the latter, than why not sue in *her* name, eliminating all doubt?  If, as may be the case, the Balisle law firm agreed to look only to Ron Symdon for payment of its fees, then why not obtain and file an assignment of claim so that appellant could at least assert the debt is now owed to the Balisle law firm?  Instead, this court is left with the essentially untenable argument, as was Judge Martin, that because the divorce decree says the obligation is owed and recoverable by Peggy Symdon, then her *law firm* gets the first priority position to which she would have been entitled.

Accordingly, the court will vacate the bankruptcy court's order apparently denying priority status on the basis that a claim by a law firm for attorney fees arising out of divorce proceedings is not, as a matter of law, entitled to priority status under 11 U.S.C. § 507(a)(1)(A), and will remand for further proceedings to determine whether the Balisle law firm has standing, through an assignment or some other cognizable legal mechanism, to pursue Peggy Symdon's award of $70,000 in attorney's fees as originally ordered in her divorce decree.  If Balisle is able to demonstrate its standing to assert this claim, then the court further directs the bankruptcy court to grant Balisle's petition for priority status under § 507(a)(1)(A).

ORDER

IT IS ORDERED that the bankruptcy court's order is VACATED.  The clerk of

court is directed to close this appellate case and REMAND for such further proceedings

consistent with this opinion and order.

Entered this 9th day of May, 2016.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge